IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

Bricella Fortunato, et al.,

    Plaintiffs,

        v.

Capitol Security Police, Inc., et al.,

    Defendants.

**Civil No. 05-1861 (GAG)**

**OPINION AND ORDER**

This is an action for sex discrimination. Plaintiff Bricella Fortunato ("Fortunato"), her husband, their conjugal partnership, and Fortunato's son and daughter commenced it after Fortunato allegedly suffered sexual harassment and retaliation in violation of Title VII and Puerto Rico law. The court has before it two motions. The first is a motion for summary judgment filed by Defendant Horizon Lines of Puerto Rico, Inc. ("Horizon"). In this motion, Horizon argues that Plaintiffs' complaint should be dismissed because Horizon was not Fortunato's employer or, in the alternative, because Horizon is entitled to the Ellerth/Faragher defense. The second motion before the court is a motion for partial summary adjudication filed by Plaintiffs. In this motion, Plaintiffs ask the court to declare that: (1) Horizon and Capitol Security Police, Inc. ("Capitol") are joint employers; (2) Horizon and Capitol did not have adequate sexual harassment policies; and (3) Horizon did not communicate its sexual harassment policy to Fortunato. After reviewing the pleadings and pertinent law, the court **DENIES** Horizon's summary judgment motion (Docket No. 31) and **DENIES** Plaintiffs' motion for partial summary adjudication (Docket No. 46).

**I.    Relevant Factual and Procedural Background**

The following undisputed material facts emerge from the parties' statements of facts, credited only to the extent either admitted or properly supported by record citations in accordance with Local Rule 56 and viewed in the light most favorable to the non-moving parties. Horizon is a corporation engaged in the maritime transportation industry. See Docket No. 34 at ¶ 1. Capitol is a corporation in the business of providing general security services. Id. at ¶ 2. Some time in 2003, Horizon hired

**Civil No. 05-1861 (GAG)**                             2

Capitol to provide security services at Horizon's premises. See Docket No. 49 at ¶ 1. The relationship between Horizon and Capitol is governed by a Security and Service Agreement ("Agreement") executed by both companies. Id. at ¶ 5. As part of the Agreement, Capitol agreed to furnish Horizon with security officers to insure the safety of Horizon's facilities, personnel, and visitors. See Docket No. 34 at ¶ 5.

On April 8, 2003, Capitol hired Fortunato as a security guard. Id. at ¶ 28. Capitol assigned Fortunato to work at Horizon's premises. Id. at ¶ 31. Some time in July or August of 2004, Fortunato complained to Santiago Serrano ("Serrano"), her shift supervisor, on at least two different occasions that a Horizon supervisor was sexually harassing her. See Fortunato's deposition of September 12, 2006 at pp. 51-59. On August 17, 2004, Fortunato reported a sexual harassment incident involving the same Horizon supervisor to Daisy Morales Sanchez ("Morales"), another shift supervisor. See Docket No. 34 at ¶ 63. Morales, in turn, reported the complaint to Rafael Lopez ("Lopez"), Capitol's Project Manager, who in turn informed Janet Nieves ("Nieves"), Horizon's Safety and Security Manager. Id. at ¶ 64. Nieves immediately called Grace Acevedo ("Acevedo"), Horizon's Human Resources Manager, and informed her of Fortunato's complaint. Id. at ¶ 65. On the same date, Acevedo interviewed Fortunato to obtain a description of the alleged harassing conduct. Id. at ¶ 66. During the interview, Fortunato claimed that a Horizon supervisor had been bothering her for approximately a month and a half. Id. at ¶ 67. Fortunato did not know the name of the supervisor that was harassing her. Id. at ¶ 68. She was able, however, to physically describe the supervisor to Acevedo. Id. at ¶ 69. With the physical description, Acevedo identified the supervisor as Edwin Nieves. Id. at ¶ 70. On the same day, Acevedo met with Edwin Nieves. Id. at 77. Due to the seriousness of Fortunato's allegations, Acevedo suspended Edwin Nieves from employment. Id. at ¶ 79.

On August 18, 2004, Acevedo interviewed four Capitol employees to investigate Fortunato's complaint. Id. at ¶¶ 80-83. She also called Joselyn Boujourne ("Boujourne"), Capitol's Director of Human Resources, to inform her about Fortunato's allegations. Id. at ¶ 86. Upon concluding her investigation, Acevedo determined that Edwin Nieves had been stalking Fortunato for approximately a month and a half. Id. at ¶ 90. Acevedo also concluded that Edwin Nieves created a hostile work

**Civil No. 05-1861 (GAG)**                                3

environment for Fortunato. Id. at ¶ 91. On August 23, 2004, Horizon terminated Edwin Nieves from employment. Id. at ¶ 92. On August 25, 2004, Acevedo and Boujourne met with Fortunato. Id. at ¶¶ 86, 93. During the meeting, Boujourne asked Fortunato to sign a document entitled "Agreement as to Action Taken Related to Investigation." Id. at ¶ 96. Fortunato refused to sign the agreement. Id. at ¶ 97. Her last day of work at Horizon was August 25, 2004. Id. at ¶ 101.

On August 11, 2005, Plaintiffs filed this sex discrimination action alleging that Fortunato suffered sexual harassment and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. See Docket No. 1. Plaintiffs also asserted supplemental law claims under Puerto Rico Law No. 100 of June 30, 1959, P.R. Laws Ann. tit. 29 § 146 et seq., Puerto Rico Law No. 69 of July 6, 1985, P.R. Laws Ann. tit. 29 § 1321 et seq., Puerto Rico Law No. 17 of April 22, 1988, P.R. Laws Ann. tit. 29 § 155 et seq., and Article 1802 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31 § 5141. Id. On November 15, 2006, Plaintiffs amended their complaint. See Docket No. 28. In this amended complaint, Plaintiffs included a claim under Article 1803 of Puerto Rico's Civil Code, P.R. Laws Ann. tit. 31 § 5142. Id.

The court has before it two motions. The first is a motion for summary judgment filed by Horizon on February 7, 2007. See Docket Nos. 31, 32, 34. On March 30, 2007, Capitol and Plaintiffs separately opposed Horizon's summary judgment motion. See Docket Nos. 50-53. Horizon replied to Plaintiffs' opposition on April 12, 2007. See Docket Nos. 75, 76. On April 13, 2007, Horizon replied to Capitol's opposition. See Docket Nos. 78, 79. On the same day, Plaintiff replied to Capitol's opposition. See Docket No. 82. The second motion before the court is a motion for partial summary adjudication filed by Plaintiffs on March 29, 2007. See Docket Nos. 46, 48, 49. On April 9, 2007, Horizon opposed Plaintiffs' motion. See Docket Nos. 70, 71. A day later, Capitol filed its opposition to Plaintiffs' motion. See Docket Nos. 72, 73.

**II.   Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A factual dispute

is "genuine" if it could be resolved in favor of either party, and "material" if it potentially affects the outcome of the case." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004).

The moving party has the burden of establishing the nonexistence of a genuine issue of material fact. Celotex, 477 U.S. at 325. This burden has two components: (1) an initial burden of production that shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion that always remains on the moving party. Id. at 331. The moving party may discharge its burden by "pointing out to the district court ... that there is an absence of evidence to support the nonmoving party's case." Id. After the moving party makes this initial showing, the "burden shifts to the nonmoving party with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) (citing Celotex, 477 U.S. at 322-25). To meet this burden, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court must view the record and all reasonable inferences in the light most favorable to the nonmoving party. Id. If the court finds that some genuine factual issues remain, the court must deny the motion. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 284 (1986).

**III.    Legal Analysis**

Horizon has moved for summary judgment on the ground that Horizon was not Fortunato's employer or, in the alternative, because Horizon is entitled to the Ellerth/Faragher defense. Plaintiffs have moved for partial summary adjudication declaring that: (1) Horizon and Capitol are joint employers; (2) Horizon and Capitol did not have adequate sexual harassment policies; and (3) Horizon did not communicate its sexual harassment policy to Fortunato. Below, the court examines the applicable law and summary judgment record to determine whether either party is entitled to a judgment as a matter of law.

A. Joint Employer

"A joint employer relationship exists where two or more employers exert significant control over the same employees and share or co-determine those matters governing essential terms and conditions of employment." Holyoke Visiting Nurses Ass'n v. NLRB, 11 F.3d 302, 306 (1st Cir.

**Civil No. 05-1861 (GAG)**                           5

1993) (citing Rivas v. Federacion de Asociaciones Pecuarias de Puerto Rico, 929 F.2d 814, 819-20 (1st Cir. 1991); NLRB. v. Browning-Ferris Industries, Inc., 691 F.2d 1117, 1124 (3d Cir. 1982)). Whether an employer possesses sufficient indicia of control to be an employer is essentially a factual issue. Rivas, 929 F.2d at 819-20 (citing Boire v. Greyhound Corp., 376 U.S. 473, 480-81 (1964)). To determine the existence of joint employer status, the First Circuit has recognized a host of relevant factors to consider in this inquiry. See Holyoke Nurses, 11 F.3d at 306; Rivas, 929 F.2d at 820-21. Those factors include: supervision of the employees' day-to-day activities; authority to hire, fire, or discipline employees; authority to promulgate work rules, conditions of employment, and work assignments; participation in the collective bargaining process; ultimate power over changes in employer compensation, benefits, and overtime; and authority over the number of employees. Rivera-Vega v. ConAgra, Inc., 70 F.3d 153, 163 (1st Cir. 1995) (citing W.W. Grainger, Inc. v. NLRB, 860 F.2d 244, 247 (7th Cir. 1988); Clinton's Ditch Cooperative Co. v. NLRB, 778 F.2d 132, 138-39 (2d Cir. 1985), cert. denied, 479 U.S. 814 (1986); Ref-Chem Co. v. NLRB, 418 F.2d 127, 129 (5th Cir. 1969)). Below, the court evaluates these factors to determine whether Horizon and Capitol are joint employers as a matter of law.

The first factor in the joint employer analysis examines the supervision of the employees' day-to-day activities. With respect to this factor, Horizon alleges that it did not supervise any Capitol employee. Instead, Horizon avers that Capitol provided its own shift supervisors. See Nieves' statement, Docket No. 34 at ¶ 14. The shift supervisors were in charge of supervising the security guards that rendered services at Horizon. Id. Additionally, Capitol assigned a Project Manager that served as a liaison between Capitol and Horizon. Id. at ¶ 17. The Project Manager was responsible for visiting the guard posts and meeting with the shift supervisors on a daily basis. Id. at ¶ 18.

Plaintiffs maintain that Horizon supervised Capitol employees. Specifically, Plaintiffs claim that Fortunato received instructions on what to do from Horizon supervisors, including Luis Rivera. See Excerpt of Fortunato's deposition, Docket No. 47 at pp. 26-27. Additionally, Plaintiffs contend that Nieves, Horizon's Safety and Security Manager, supervised Serrano, a Capitol shift supervisor. See Except of Serrano's deposition, Docket No. 47 at p. 27. Because the evidence on whether

**Civil No. 05-1861 (GAG)**                                      6

Horizon supervised Capitol employees is controverted, the court finds that there is a genuine issue of material fact as to the first factor in the joint employer analysis.

The second factor in the joint employer analysis examines the authority to hire, fire, or discipline employees. With respect to this factor, Horizon alleges that Capitol selected the personnel that was going to work at Horizon's premises and that Capitol was in charge of taking disciplinary action against the security guards that rendered services at Horizon. See Boujourne's deposition, Docket No. 34 at p. 98; Nieves' Statement, Docket No. 34 at ¶ 26. In contrast, Plaintiffs maintain that Horizon told Capitol to hire some employees, including Lopez. See Boujourne's deposition, Docket No. 34 at p. 98. Additionally, Plaintiffs aver that Horizon had the authority to request the removal of Capitol's security guards for noncompliance with the Agreement. See Nieves' deposition, Docket No. 47 at pp. 47-48. Finally, Lopez in his deposition attested that Nieves would discipline him if he was not doing his job. See Lopez' deposition, Docket No. 58 at p. 70. Given this controverted evidence on the authority to hire, fire, or discipline employees, the court finds that there is a genuine issue of material fact as to the second factor in the joint employer analysis.

The third factor in the joint employer analysis deals with the authority to promulgate work rules, conditions of employment, and work assignments. With respect to this factor, Horizon alleges that Capitol was responsible for establishing Fortunato's work assignments, schedule, working hours and compensation and that Horizon did not exercise control over the terms and conditions of Fortunato's employment as a security guard. See Nieves' statement, Docket No. 34 at ¶¶ 35, 36. Plaintiffs dispute these claims and aver that Fortunato received instructions on what to do from Horizon supervisors, including Luis Rivera. See Excerpt of Fortunato's deposition, Docket No. 47 at pp. 26-27. Moreover, Plaintiffs maintain that Horizon controlled the number of guards, the location of their posts, and the guards' schedules, clothing and equipment. See Portilla's deposition, Docket No. 47, at p. 38. Capitol alleges that its security guards had to adhere to the norms and procedures issued by Horizon's Security Manager. See Exhibit 2, Docket No. 34 at p. 12. Because the evidence on the authority to promulgate work rules, conditions of employment, and work assignments is controverted, the court finds that there is a genuine issue of material fact as to the third factor in the joint employer analysis.

The fourth factor in the joint employer analysis examines the participation in the collective bargaining process. The court cannot evaluate this factor because the parties have not submitted any evidence pertaining to it.

The fifth factor deals with ultimate power over changes in employer compensation, benefits, and overtime. Here, the evidence is undisputed that Capitol assumed responsibility for the payment of salaries, bonuses, federal and Commonwealth taxes, unemployment taxes, State Insurance Fund Premiums, overtime and holiday wages of the security guards that worked at Horizon's premises. See Nieves' statement, Docket No. 34 at ¶ 20. Thus, the fifth factor favors a finding that Horizon and Capitol are not joint employers.

Finally, the sixth factor in the joint employer analysis examines the authority over the number of employees. With respect to this factor, the evidence is undisputed that Horizon had the right to change the number of Capitol security guards working at Horizon's premises. See Portilla's deposition, Docket No. 47, at p. 38. Therefore, the sixth factor favors a finding that Horizon and Capitol are joint employers.

In sum, there are a genuine issues of material fact as the first three factors in the joint employer analysis. The fourth factor is neutral. The fifth factor favors a finding that Horizon and Capitol are not joint employers. The sixth factor favors a finding that Horizon and Capitol are joint employers. In light of the above, the court cannot decide as a matter of law whether a joint employer relationship existed between Horizon and Capitol. A jury must resolve the factual disputes at issue and weigh the factors in the joint employer analysis.[1]

B. Ellerth/Faragher Defense

In the instant case, Plaintiffs allege that Edwin Nieves, a Horizon supervisor, sexually harassed Fortunato by creating a hostile work environment. When a supervisor creates a hostile work

---

[1] Plaintiffs allege that Horizon and Capitol discharged Fortunato in retaliation for making a sexual harassment complaint. Horizon asks the court to dismiss Plaintiffs' retaliation claim against Horizon on the ground that Horizon was not Fortunato's employer. Because the court finds that there is a triable issue of material fact as to whether Horizon and Capitol are joint employers, the court will not dismiss Plaintiffs' retaliation claim against Horizon.

**Civil No. 05-1861 (GAG)**                                8

environment, the employer is vicariously liable for it, subject, however, to a possible affirmative defense. Noviello v. City of Boston, 398 F.3d 76, 94, (1st Cir. 2005) (citing Burlington Indus., Inc. v. Ellerth, 524 U.S. 742, 765 (1998); Faragher v. City of Boca Raton, 524 U.S. 775, 807-08 (1998)). This defense, familiarly known as the Ellerth/Faragher defense, is not available when "the supervisor's harassment culminates in tangible employment action, such as discharge, demotion, or undesirable reassignment." Faragher, 524 U.S. at 808.

The Ellerth/Faragher defense consists of two elements which, if proven, permit the employer to avoid liability. First, the employer must show that it "exercised reasonable care to prevent and correct promptly" the harassment. Ellerth, 524 U.S. at 765. Second, the employer must show that the employee "unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. Although the burden of proof lies on the employer as to both prongs of the affirmative defense, summary judgment for the employer is still possible so long as the raw facts are undisputed or assumed in favor the plaintiff. Reed v. MBNA Marketing Systems, Inc., 333 F.3d 27, 34 (1st Cir. 2003).

As to the first element of the defense, proof of an anti-harassment policy with a complaint procedure available to employees, while not necessarily dispositive, is relevant Arrieta-Colon v. Wal-Mart Puerto Rico, Inc., 434 F.3d 75, 86 (1st Cir. 2006) (citing Faragher, 524 U.S. at 807). As to the second element of the defense, proof that the employee failed to meet his obligation of using reasonable care is not limited to an unreasonable failure to use such a procedure, but such proof will normally suffice to meet the employer's burden. Id. See also Reed, 333 F.3d at 32; Marrero v. Goya of P.R., Inc., 304 F.3d 7, 20 (1st Cir. 2002).

### 1. Horizon

Horizon has moved to dismiss Plaintiffs' complaint on the grounds that Horizon has a well published policy against sexual harassment and that once Horizon learned of Fortunato's sexual harassment complaint it took reasonable measures to correct the harassment. Plaintiffs have moved for partial summary adjudication declaring that Horizon did not have an adequate sexual harassment policy and that Horizon did not communicate its policy to Fortunato.

A review of the record shows that Horizon had two documents stating its sexual harassment policy at all times relevant to this suit. The first document is a Code of Business Conduct ("Code"). The Code defines sexual harassment, advises that it is illegal, and establishes a complaint procedure. See Exhibit 10, Docket No. 34 at pp. 10-12. The second document is a poster that was posted throughout Horizon's premises. The poster defines sexual harassment, advises it is illegal, and provides telephone numbers to report any harassment. See Exhibit 4, Docket No. 47. Horizon claims that these documents establish that Horizon has a well established policy against sexual harassment. Plaintiffs maintain that these documents are inadequate because they do not provide specific procedures to be followed by independent contractors harassed by Horizon's employees.

The Code states that Horizon's policy "applies to all Company employees, temporary employees, independent contractors or consultants and all third-parties present on Company property who engage in conduct which is engaged in, by, or directed at Company employees." See Exhibit 10, Docket No. 34 at p. 12. A plausible interpretation of this language is that Horizon's policy covers only the persons who engage in conduct which is directed at Horizon's employees. However, another possible interpretation is that the policy applies to independent contractors such as Fortunato and that the clause "who engage in conduct which is engaged in, by, or directed at Company employees" applies only to third parties, the term immediately preceding the clause. Given that the coverage provision of the Code is susceptible to more than one reasonable interpretation, the court finds that there is a genuine issue of material fact as to whether the Code applied to Fortunato.

Moreover, it is undisputed that the poster stating Horizon's sexual harassment policy did not contain any language limiting its application. See Exhibit 4, Docket No. 47. A reasonable jury could find that the lack of limiting language means that the poster covered Fortunato. Therefore, the court finds that there is a genuine issue of material fact as to whether Horizon's poster applied to Fortunato. In light of the above, the court cannot conclude as a matter of law that Horizon's sexual harassment policy was inadequate.

Plaintiffs contend that even if Horizon's sexual harassment policy was adequate, Horizon did not communicate it to Fortunato. The undisputed evidence shows that Horizon did not distribute its sexual harassment policy to Fortunato. See Docket No. 49 at ¶ 42. Nevertheless, Horizon claims

**Civil No. 05-1861 (GAG)**     10

that Horizon placed posters around its facilities stating its sexual harassment policy. See Exhibit 4, Docket No. 47. One of the posters was allegedly placed in Horizon's Security Office. See Docket No. 49 at ¶ 59. Given this evidence, the court finds that Horizon has created a genuine issue of material fact as to whether it disseminated Horizon's sexual harassment policy to Fortunato.

The court turns to Horizon's allegation that once it learned of Fortunato's sexual harassment complaint it took reasonable measures to correct the harassment. To support this allegation, Horizon has introduced evidence showing the following. On August 17, 2004, Fortunato informed Morales, one of her Capitol supervisors, that a Horizon supervisor had been bothering her. See Docket No. 34 at ¶ 63. Morales, in turn, reported the complaint to Lopez, Capitol's Project Manager, who in turn informed Nieves, Horizon's Safety and Security Manager. Id. at ¶ 64. Nieves immediately called Acevedo, Horizon's Human Resources Manager, and informed her of Fortunato's complaint. Id. at ¶ 65. On the same date, Acevedo interviewed Fortunato to obtain a description of the alleged harassing conduct. Id. at ¶ 66. During the interview, Fortunato claimed that a Horizon supervisor had been bothering her for approximately a month and a half. Id. at ¶ 67. Fortunato did not know the name of the supervisor that was harassing her. Id. at ¶ 68. She was able, however, to physically describe the supervisor to Acevedo. Id. at ¶ 69. With the physical description, Acevedo identified the supervisor as Edwin Nieves. Id. at ¶ 70. On the same day, Acevedo met with Edwin Nieves. Id. at 77. Due to the seriousness of Fortunato's allegations, Acevedo suspended Edwin Nieves from employment. Id. at ¶ 79. On August 18, 2004, Acevedo interviewed four Capitol employees to investigate Fortunato's complaint. Id. at ¶¶ 80-83. She also called Boujourne, Capitol's Director of Human Resources, to inform her about Fortunato's allegations. Id. at ¶ 86. Upon concluding her investigation, Acevedo determined that Edwin Nieves had been stalking Fortunato for approximately a month and a half. Id. at ¶ 90. Acevedo also concluded that Edwin Nieves created a hostile work environment for Fortunato. Id. at ¶ 91. On August 23, 2004, Horizon terminated Edwin Nieves from employment. Id. at ¶ 92.

Plaintiffs claim that these corrective measures were not adequate because Horizon had notice of the sexual harassment committed against Fortunato prior to August 17, 2004. In support thereof, Plaintiffs claim that Lopez, Capitol's Project Manager and liaison between Capitol and Horizon,

knew about it the alleged harassment prior to August 17, 2004. Plaintiffs impute Lopez' knowledge to Horizon. Because there are genuine issues of material fact as to whether Horizon and Capitol are joint employers and as to when Horizon received notice of the sexual harassment committed against Fortunato, the court cannot conclude as a matter of law that Horizon's corrective measures were reasonable under the circumstances.

Moreover, even if Horizon's corrective measures were reasonable, to meet the first element of the Ellerth/Faragher defense, the employer must show that it "exercised reasonable care to ***prevent*** and correct promptly" the harassment. Ellerth, 524 U.S. at 765 (emphasis added). Plaintiffs allege that Horizon did not exercise reasonable care to prevent the sexual harassment suffered by Fortunato. To support this allegation, Plaintiffs have presented evidence that Horizon: (1) did not require Capitol to train the security personnel on Horizon's sexual harassment policy; (2) did not orient Capitol's personnel, including the Project Manager, on sexual harassment issues; and (3) did not invite the Capitol personnel to the trainings and seminars, if any, given by Horizon on sexual harassment issues. See Docket No. 49 at ¶ 33-35, 43. Additionally, the court notes that it is unclear whether Horizon's sexual harassment policy covered Fortunato and whether Horizon communicated this policy to Fortunato. Taken together, this evidence raises a genuine issue of material fact as to whether Horizon had reasonable measures to prevent sexual harassment.

Given that there are genuine issues of material fact as to whether Horizon's sexual harassment policy applied to Fortunato, whether Horizon communicated its policy to Fortunato, whether Horizon took reasonable preventive measures to protect Fortunato from sexual harassment, and whether Horizon took reasonable measures to correct the sexual harassment suffered by Fortunato, the court cannot conclude as a matter of law that Horizon complied with the first element of the Ellerth/Faragher defense. Because Horizon has not established that it met the first element of the Ellerth/Faragher defense, the court will not dismiss Plaintiffs' complaint as to Horizon.

### 2. Capitol

Plaintiffs have moved for partial summary adjudication declaring that Capitol did not have an adequate sexual harassment policy because Capitol's policy did not include procedures to cover sexual harassment committed by its client's personnel against Capitol's employees. Capitol disputes

**Civil No. 05-1861 (GAG)**           12

this claim and avers the following.  Capitol's policy against sexual harassment is contained in its Employee Manual.  See Docket No. 73 at 50.  This manual provides that sexual harassment may occur between a supervisor and an employee, coworkers, or clients, visitors and employees.  See Capitol's 2003 Employee Manual, Docket No. 47 at p. 5.  The manual also states that it is Capitol's policy to take an appropriate action to correct any sexual harassment incident committed by a supervisor, employee, or any other person, including visitors and sellers.  Id. at ¶¶ 5-6.  Furthermore, the manual states that in cases where the sexual harassment is committed by a third person (sellers, clients or visitors), Capitol will take any available corrective measure.  Id. at ¶ 7.  Finally, the manual provides a complaint procedure.  Id.  Boujourne, Capitol's Director of Human Resources, attested that the complaint procedure used to report sexual harassment by a client is the same as that used to report sexual harassment by a Capitol employee.  See Boujourne' deposition, Docket No. 90 at p. 128.  In light of the above, the court finds that Capitol has raised a genuine issue of material fact as to whether Capitol had an adequate sexual harassment policy.

**IV.   Conclusion**

For the foregoing reasons, Horizon's motion for summary judgment (Docket No. 31) is hereby **DENIED** and Plaintiffs' motion for partial summary adjudication (Docket No. 46) is hereby **DENIED**.

**SO ORDERED**.

In San Juan, Puerto Rico this 10th day of September 2007.

*S/Gustavo A. Gelpí*

GUSTAVO A. GELPI
United States District Judge